UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> -against-<br><br>ALL RIGHT, TITLE, AND INTEREST IN:<br><br>ANY AND ALL SHARES OF STOCK AND ANY OTHER INTEREST IN BRYANSTON GROUP, INC. HELD IN THE NAME OR FOR THE BENEFIT OF BEATRICE N. TOLLMAN OR STANLEY S. TOLLMAN;<br><br>ANY AND ALL SHARES OF STOCK AND ANY OTHER INTEREST IN T.H. COURT CORP. HELD IN THE NAME OR FOR THE BENEFIT OF STANLEY S. TOLLMAN; and<br><br>ANY AND ALL PARTNERSHIP INTEREST AND ANY OTHER INTEREST IN T.H. COURT LIMITED LIABILITY PARTNERSHIP HELD IN THE NAME OR FOR THE BENEFIT OF STANLEY S. TOLLMAN OR BRETT G. TOLLMAN,<br><br>   Defendants in rem. | 08 CV 4806 (LAP)(DCF) |

**MEMORANDUM OF LAW IN SUPPORT OF THE
UNITED STATES' MOTION TO STRIKE THE CLAIMS FILED
BY FUGITIVES STANLEY S. TOLLMAN AND BEATRICE NINA TOLLMAN**

              **MICHAEL J. GARCIA
              United States Attorney for the
              Southern District of New York**

**STANLEY J. OKULA,
BARBARA A. WARD,
Assistant U.S. Attorneys
 — Of Counsel —**

## TABLE OF CONTENTS

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts and Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. The Underlying Conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. The Fugitive Status.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. The Forfeitures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Point I The Court Should Apply the Fugitive Disentitlement Doctrine And Strike Stanley S. Tollman's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Point II Claimant Beatrice Tollman Lacks Statutory Standing to Contest the Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

A. Standing and the Applicable Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

1. Standing . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. 12(b)(1) . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3 12(c) . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. Beatrice N. Tollman's Statement of Interest Is Facially Defective and Should Be Stricken . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **PRELIMINARY STATEMENT**

In this civil forfeiture action, the United States seeks the forfeiture of various corporate entities (the "forfeitable properties") in which Stanley S. Tollman and other family members had or have ownership interests. The United States has alleged that the forfeitable properties constitute the proceeds of a specified unlawful activity and have been involved in money laundering. Verified Complaint, ¶¶ 36-46. In response to the Verified Complaint, Stanley S. Tollman and his wife, Beatrice Nina Tollman — both of whom are fugitives on criminal charges pending in this judicial district — have filed statements of interest to various of the forfeitable properties. The United States now moves, pursuant to Rules 12(b)(1), 12(c), and 56 of the Federal Rules of Civil Procedure, for an order striking their claims and granting judgment to the United States with respect to the claims of Stanley and Beatrice Tollman.

Stanley S. Tollman's statement of interest should be stricken because, as a fugitive on the criminal charges giving rise to the forfeiture claims, he should not be permitted to avail himself of the benefits of this Court. His claim should therefore be barred under the "fugitive disentitlement" doctrine. Beatrice N. Tollman's claim is facially deficient in that it is verified not by her — as explicitly required by the governing rules — but by her attorney.

In sum, neither Stanley S. Tollman's claim nor Beatrice Nina Tollman's claim should be allowed to stand.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.     **The Underlying Conduct**

This action, and a related criminal action, *United States* v. *Monty D. Hundley*, S3 02 Cr. 441 (LAP), arise from allegations that Stanley S. Tollman, Brett Tollman, and Monty Hundley, together and with the assistance of others, including claimant Beatrice Nina Tollman, engaged in a long-standing scheme to defraud a host of financial institutions of over $100 million. The fraud scheme, which resulted in the conviction of Hundley and three others on various bank and tax fraud charges, is set forth in the Second Circuit's recent opinion in *United States* v. *Cutler*, 520 F.3d 136 (2d Cir. 2008), and will be repeated herein at length.

As it relates to this forfeiture action, the fraudulent conduct of Tollman and Hundley consisted of falsely representing to several financial institutions that they lacked the financial wherewithal to pay over $100 million in outstanding indebtedness to the banks, which included deficiency notes signed by Tollman and Hundley individually. Additionally, in order to induce the financial institutions to sell that debt for pennies on the dollar — thus allowing Tollman and Hundley to retain their HFS stock windfall and other assets to which the banks had a right to lay claim, *see United States* v. *Cutler*, 520 F.3d at 141 — Tollman and Hundley enlisted co-conspirators to assist in falsely representing that a group of Euro-investors wished to purchase the Tollman/Hundley debt. In reality, the Euro-investor group did not exist. Moreover, Tollman and Hundley had the ability to pay off their debts. *Id*. at

3

142-44.

As a result of the scheme, the banks lost over $100 million, resulting in Tollman and Hundley's retention of personal assets worth that much (such as Bryanston, and various hotel properties), which they otherwise would have had to use to satisfy their debts. Verified Complaint, ¶¶ 33-35.

**B.     The Fugitive Status**

In early 2002, Stanley Tollman's New York attorneys (John J. Tigue and Robert Morvillo) were informed by the United States Attorney's Office for the Southern District of New York that an indictment of Tollman and others based on the foregoing conduct would be returned in or about April 2002. Following the return of the indictment against Hundley, Stanley S. Tollman, and others, Stanley S. Tollman failed to appear for his April 23, 2002 arraignment, resulting in the issuance of an arrest warrant for Tollman that day by Magistrate Judge Lisa Margaret Smith. *See* Okula Declaration (attaching Witness Statement of Stanley J. Okula, Jr., submitted in connection with the United Kingdom extradition proceedings). Tollman thereafter refused to return to the United States from England to face the charges, notwithstanding his awareness of the United States' request to have him returned, which Tollman challenged while free on bail in the United Kingdom. The United States' request that the United Kingdom extradite Stanley Tollman was denied in May of this year, based on a determination by a United Kingdom Magistrate that it would be "oppressive" to return Stanley Tollman on the charges because the health of Stanley

Tollman's wife would be endangered. *See* Okula Declaration (attaching United Kingdom Magistrate's decision).

Beatrice Tollman, too, left the United States shortly after the April 2002 indictment of her husband Stanley S. Tollman, and refused to return to the United States to face the tax fraud charges leveled against her in early 2003. *Id*. The United States' request to have Beatrice Tollman was denied based upon a determination that hee mental health would be endangered upon such a return.

C.  **The Forfeitures**

Following the conviction of Hundley and others at trial, this Court entered an order forfeiting to the United States various interests of Hundley, including his 50% ownership interest in Bryanston. *Id*. The forfeiture order was based on the facts adduced at the criminal trial of Hundley and his co-defendants.

On or about May 22, 2008, the United States filed its Verified Complaint, seeking civil forfeiture of Bryanston and other forfeitable assets. The Claimants, including fugitive Beatrice Tollman, filed statements of interest, or claims, on or about July 7, 2008. *See* Okula Declaration. Beatrice Tollman's claim was verified by her attorney. *Id*.

5

# ARGUMENT

## POINT I

### THE COURT SHOULD APPLY THE FUGITIVE DISENTITLE-MENT DOCTRINE AND STRIKE STANLEY S. TOLLMAN'S CLAIM

Stanley S. Tollman is a fugitive from justice and therefore should not be permitted to avail himself of the benefits of this Court. Accordingly, Stanley S. Tollman should be barred from contesting this forfeiture action. Because there are no material issues of disputed fact with respect to this issue, the United States is entitled to have Stanley S. Tollman's claim stricken pursuant to the fugitive disentitlement doctrine.

On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 106-185, 114 Stat. 202 (2000). CAFRA was "the most comprehensive revision of the civil asset forfeiture laws to be passed by Congress since the first forfeiture statutes were enacted in 1789." *Rohlsen v. DEA Atlanta Airport Task Force,* 2005 WL 878573, 2005 U.S. Dist. LEXIS 25163 at *10 (N.D.Ga.2005). The "disentitlement" provision of CAFRA, codified at 28 U.S.C. § 2466 — which sought to address the "unseemly spectacle" of "a criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Collazos v. United States,* 368 F.3d 190, 200 (2d Cir.2004) — provides in relevant part as follows:

   (a) A judicial officer may disallow a person from using the resources of the

6

courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person--

>  (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution–
>
>> (A) purposely leaves the jurisdiction of the United States;
>>
>> (B) declines to enter or reenter the United States to submit to its jurisdiction; or
>>
>> (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
>
>  (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466(a). Thus, by its terms, the statute identifies five prerequisites to disentitlement: (1) that a warrant be issued for the claimant's arrest; (2) that the claimant have knowledge of the warrant; (3) that the criminal case be related to the forfeiture action; (4) that the claimant not be held in custody in another jurisdiction; and (5) that the claimant have deliberately avoided prosecution. *Collazos* v. *United States*, 368 F.3d at 198. Stanley S. Tollman clearly satisfies each of the criteria outlined in the statute and qualifies as a fugitive whose claims may be stricken.

With respect to the first and second criteria, there can be no dispute that a warrant has been issued for Tollman's arrest and that Tollman is aware of the warrant. Nor can there be any dispute that this forfeiture action is related to the pending criminal case. Indeed, the Verified Complaint tracks much of the language in Superseding Indictment, and

is based in significant measure on facts that were established at the trial of Stanley S. Tollman's co-defendants. Further, Tollman was free on bail during the pendency of the extradition proceedings in the United Kingdom, and he is at liberty — and free to return to the United States and face the extant criminal charges — today. *United States* v. *All Right, Title, and Interest in Real Property, Appurtenances and Improvements Known as 479 Tamarind Drive*, 2005 WL 2649001, *3 (S.D.N.Y. Oct. 14, 2005) (if claimant forfeited right to contest extradition, he was free to leave foreign country; "[t]herefore, the conditions of his release on bond do not preclude the court from subjecting [claimant] to fugitive disentitlement"). Finally, as he made clear in his challenge to the United States' extradition request, Tollman has steadfastly refused to return to the United States and face the charges. Given the foregoing, Stanley S. Tollman is a fugitive as defined by the statute. *Collazos*, 368 F.3d at 198-200.

The decision whether to order disentitlement now rests in the "sound discretion" of this Court. *Collazos*, 368 F.3d at 198. Although the authority to order disentitlement is discretionary, courts have not hesitated to strike fugitives' claims. *See id*. at 201-04; *United States* v. *$6,976.934.65 Plus Interest*, 478 F. Supp.2d 30, 39 (D.D.C.2007) (tentatively finding disentitlement doctrine applicable, and subsequently applying doctrine); *United States* v. *$1,278,795*, 2006 WL 870364 (S.D. Tex. Mar. 30 2006) (dismissing claim because warrant had issued and claimant fled in order to avoid prosecution); *United States* v. *One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F. Supp.2d 1321, 1333 (S.D.

Ala. 2005) ("the issue today is whether [claimant] should be permitted to avail himself of the jurisdiction of this Court to reclaim property that he claims belongs to him even as he disrespects the jurisdiction of this Court to institute criminal proceedings against him based on his alleged criminal activities involving that very property"); *United States* v. *All Right, Title, and Interest in Real Property, Appurtenances and Improvements Known as 479 Tamarind Drive*, 2005 WL 2649001, *3 (S.D.N.Y. Oct. 14, 2005) ("As a fugitive from justice, [claimant] has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim") (quotation marks omitted); *United States* v. *All Right, Title, and Interest in Real Property and Appurtenances Located at Trump World Towers*, 2004 WL 1933559, *2 (S.D.N.Y. Aug. 31, 2004) ("a claimant may not use the resources of a federal court for personal benefit while knowingly evading the jurisdiction of the same court to avoid criminal prosecution"); *United States* v. *10 Meadow Lane*, 2005 WL 1530252 (N.D. W. Va. Jun. 6 2005) (summary judgment granted against fugitive who successfully fought extradition); *United States* v. *$138,381*, 240 F. Supp.2d 220, 226 (E.D.N.Y. 2003) (Dearie, J.) (granting summary judgment to government because claimant was a fugitive as defined by statute).

The "unseemly spectacle" of Stanley Tollman simultaneously thumbing his nose at this Court in the criminal matter and seeking the Court's assistance in this civil action should not be countenanced. *Collazos*, 368 F.3d at 200. Indeed, Tollman's knowing decision to scurry from the United States just before he knew an indictment was to be returned, and

9

his adamant refusal to return to face the charges, plainly should not be condoned by permitting him to contest this forfeiture proceeding. His claim should therefore be stricken, pursuant to 28 U.S.C. § 2466.

## POINT II

### CLAIMANT BEATRICE TOLLMAN LACKS STANDING TO CONTEST THE FORFEITURE

It is clear that Beatrice Tollman's statement of interest — that is, her claim — is facially defective in that it is not verified by her. Such a failure deprives her of statutory standing. This defect is fatal to Beatrice Tollman's ability to prosecute this litigation.

**A.   Standing and the Applicable Standards of Review**

    **1.   Standing**

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States* v. *Cambio Exacto*, 166 F.3d 522, 526 (2d Cir. 1999). A claimant in a judicial forfeiture action must establish standing under the applicable statute and standing under Article III of the U.S. Constitution. *Id.*; *Mercado* v. *U.S. Customs Service,* 873 F.2d 641, 644 (2d Cir. 1989). Compliance with the rules for filing claims and answers governs the statutory standing analysis. *Cambio Exacto*, 166 F.3d at 526-27.

A claimant bears the burden of establishing standing, and she must do so with competent, admissible evidence. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

(standing is an "indispensable" part of a case and "must be supported in the same way as any other matter on which [a party] bears the burden of proof"); *Mercado*, 873 F.2d 641 at 645 (hearsay and conclusory statements insufficient to establish standing). *See also* Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims (the Court must determine a motion to strike for lack of standing before any motion to dismiss, and standing must be established by a preponderance of the evidence). The Court may, if it finds it appropriate to do so, order a hearing to resolve any questions of fact needed to resolve this matter.

### 2.     Rule 12(b)(1)

Because Beatrice Tollman lacks standing, this Court lacks jurisdiction to hear her claims. The party invoking the court's jurisdiction bears the burden of asserting a "proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Linardos* v. *Fortuna*, 157 F.3rd 945, 947 (2d Cir. 1998). Further, and as with the standing inquiry, the party invoking jurisdiction must prove jurisdiction by a preponderance of the evidence. *Malik* v. *Meissner*, 82 F.3rd 560, 562 (2d Cir. 1996).

When evaluating a facial challenge to subject matter jurisdiction, the Court must accept as true all material factual allegations set forth in the pleadings and refrain from drawing inferences in favor of the party contesting jurisdiction. *Atlantic Mutual Insurance Company* v. *Balfour MacLaine Intel Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). However, when

the movant controverts the non-movant's jurisdictional allegations, the Court may consider matters outside the pleadings, such as deposition testimony, affidavits, and documentary evidence, and may engage in fact-finding as to any disputed facts relevant to the jurisdictional determination. Thus, the standard for evaluating 12(b)(1) motions may, in certain circumstances, be similar to that used to evaluate motions for summary judgment under Rule 56. *Antares Aircraft* v. *Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991).

    3.    <u>**Rule 12(c)**</u>

Alternatively, the Court may analyze standing under Rule 12(c) because the face of the pleadings provide a sufficient basis upon which to rule. The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cleveland* v. *Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006); *DeMuria* v. *Hawkes*, 328 F.3d 704, 706 n. 1 (2d Cir. 2003) (Rule 12(b)(6) and Rule 12(c) standards are indistinguishable).

**B.**    <u>**Beatrice N. Tollman's Statement of Interest**</u>
       <u>**Is Facially Defective and Should be Stricken**</u>

The Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, which became effective December 1, 2006, require a claimant to sign the statement of interest him or herself. Specifically, Rule G(5) of the Supplemental Rules provides that claims filed in forfeiture proceedings must "be signed by the claimant under penalty of perjury." This verification requirement, which has its roots in an earlier version of the rule,

is an important aspect of the rule and does not elevate form over substance.  Rather, by recognizing the "substantial danger of false claims in forfeiture proceedings," it ensures the integrity of those proceedings.  *Mercado* v. *U.S. Customs Service,* 873 F.2d at 645.  *See also United States* v. *Commodity Account No. 54954930*, 219 F.3d 595, 597 (7th Cir. 2000) (verification is "not a mere technical requirement," and failure to verify results in a failure to establish statutory standing).

Here, Beatrice Tollman caused the filing of a verified claim, but she did not submit herself to the risk of perjury.  Instead, her attorney verified the claim.  This is plainly insufficient under the rule. *Cf. Mercado*, 873 F.2d at 645 (a claim requires more "than the conclusory, hearsay, on-information-and-belief statement of [a] lawyer"); *United States* v. *$125,934.62*, 370 F.3d 1325 (11th Cir. 2004) (claim must be verified by claimant, not counsel); *United States* v. *Speed Joyeros, S.A.*, 410 F. Supp.2d 121, 123  (E.D.N.Y. 2006) (Weinstein, J.) (construing 21 U.S.C. § 853 in the context of an ancillary proceeding and refusing to permit attorney to verify claims even when he provided notarized power of attorney signed by all thirty-three clients).

In short, when a claimant is available to verify her own claim, the court should not permit her "to rely upon a hearsay and conclusory verification by his lawyer." *Mercado*, 873 F.2d at 645.

13

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court strike the Claimants' statements of interest and order such other and further relief as this Court deems proper.

Dated:  New York, New York
       August 11, 2008

                                  Respectfully submitted,

                                  MICHAEL J. GARCIA
                                United States Attorney
                                Southern District of New York

                   By:   s/Stanley J. Okula, Jr
                          Stanley J. Okula, Jr.
                          Assistant U.S. Attorney